UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GARRY V. MATTSON, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE,[1] <br> Commissioner of Social Security, <br><br> Defendant. | No. EDCV 06-1004 FFM <br><br> MEMORANDUM DECISION AND ORDER |

On September 22, 2006, plaintiff Garry V. Mattson brought this action seeking to overturn the decision of the Commissioner of the Social Security Administration[1] denying his application for Disability Insurance benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. Pursuant to the case management order entered on September 26, 2006, on June 4, 2007, the parties filed a Joint Stipulation detailing each party's arguments and authorities. The Court has reviewed the administrative record ("AR"),

---

[1] Michael J. Astrue became Commissioner of the Social Security Administration on February 12, 2007 and is hereby substituted as defendant pursuant to Federal Rule of Civil Procedure 25(d).

filed by defendant on March 28, 2007, and the Joint Stipulation ("JS").  For the reasons stated below, the Court affirms the Commissioner's decision.

## PROCEDURAL HISTORY

On November 24, 2003, Gary V. Mattson filed an application for Supplemental Security Income benefits.  Plaintiff alleged a disability onset of November 1, 2002.  The application was denied initially and upon reconsideration.  Plaintiff filed a timely request for a hearing before an administrative law judge ("ALJ").  ALJ John W. Belcher held a hearing on October 19, 2005.  Plaintiff appeared with counsel and testified at the hearing.  On May 12, 2006, the ALJ issued a decision denying benefits.  Plaintiff sought review of this decision before the Appeals Council, which denied the request for review on August 21, 2006.

Plaintiff commenced the instant action on September 22, 2006.

## CONTENTIONS

Plaintiff raises three issues in this action:

1. Whether the ALJ properly considered the consultive psychologist's opinion.
2. Whether the ALJ properly considered the type, dosage, effectiveness, and side effects of any medication plaintiff takes.
3. Whether the ALJ posed a complete hypothetical to the vocational expert.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,

28 L. Ed. 2d 842 (1971); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 929-30 (9th Cir. 1986). Where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

A.   <u>Issue One</u>.

In evaluating medical opinions, the case law and regulations distinguish among three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *limited on other grounds*, *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996); *see also* 20 C.F.R. §§ 404.1502, 416.927(d). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *see also* 20 C.F.R. § 416.927(d)(2).

An ALJ may not reject the uncontradicted opinion of a treating doctor without providing "clear and convincing reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830 (internal quotation marks omitted). Even if the treating doctor's opinion is contradicted by another doctor, an ALJ may not reject the opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Id.* (internal quotation marks omitted). The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Id.*; *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). As is

the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for "specific, legitimate reasons" that are supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31.

On March 19, 2004, David Bedrin, M.D., performed a Complete Psychiatric Evaluation of plaintiff. (AR 213-17.) In the evaluation, Dr. Bedrin stated that plaintiff "is capable of following simple one and two-step instructions." (AR 216.) Dr. Bedrin also found that "[c]arrying out complex job instructions is impaired secondary to memory and concentration problems." (*Id.*)

In the decision, the ALJ discussed Dr. Bedrin's evaluation as follows:

> In addition, the claimant's mental impairments do not meet the Part B criteria. He has mild limitations of activities of daily living. The claimant does chores, takes care of his personal hygiene, shops and cooks a little (Exhibit 4F/4). This is evidence of only mild limitations.
>
> The claimant has mild to moderate limitations of social functioning. The examiner noted the claimant had some problems in this area. They observed that the claimant was pleasant, relaxed and not hostile or fearful and related well to the interviewer. He appeared depressed and his affect was constricted (Exhibit 4F/3). He was considered to be able to relate and interact with supervisors and coworkers (Exhibit 4F/4). This is evidence that the claimant has mild to moderate limitations in this area.
>
> The claimant has mild to moderate difficulties in maintaining concentration, persistence or pace. These

|   |   |
|---|---|
| 1 | difficulties limit his ability to perform detailed or complex |
| 2 | work, but it does not significantly limit his ability to perform |
| 3 | simple, repetitive and routine, i.e., unskilled work (Exhibit |
| 4 | 4F/4).  The examiner observed no looseness of associations, |
| 5 | tangentiality, or circumstantiality.  The claimant was oriented |
| 6 | times 4.  Recent and remote memory were intact (Exhibit |
| 7 | 4F).  This is evidence that the claimant has mild to moderate |
| 8 | limitations in this area. |
| 9 |       The claimant has no episodes of decompensation |
| 10 | within one year, each lasting for at least two weeks.  He was |
| 11 | pyschiatrically hospitalized one time during 1974 due to |
| 12 | depression.  In 1997, he had outpatient mental health |
| 13 | treatment for two weeks.  He has not been in the mental |
| 14 | health treatment since that time (Exhibit 4F/2).  His mental |
| 15 | impairment does not meet the Part C criteria.  The evidence |
| 16 | as a whole fails to show that the claimant had repeated |
| 17 | episodes of decompensation each of extended duration, had |
| 18 | such marginal adjustment that even a minimal increase in |
| 19 | mental demands or change in the environment would be |
| 20 | predicted to cause the individual to decompensate, or had one |
| 21 | or more hears [*sic*] inability to function outside a highly |
| 22 | supportive living arrangement. |

23 (*Id.* at 13.)  The ALJ ultimately determined that plaintiff had the residual functional
24 capacity to perform "2-3 step simple repetitive tasks."  (*Id.* at 14.)
25       Plaintiff contends that by finding that plaintiff was (1) "capable of" following
26 simple one and two-step instructions; and (2) impaired in his ability to perform
27 complex or detailed work, Dr. Bedrin limited plaintiff to following instructions only
28 involving one or two steps.  Thus, argues plaintiff, the ALJ's determination that

plaintiff had the residual functional capacity to perform "2-3 step simple repetitive tasks" impermissibly ignored Dr. Bedrin's opinion. (JS 4.)

This argument is unavailing. The Court agrees with respondent that Dr. Bedrin did not limit plaintiff *only* to following instructions, or performing tasks, that involve one or two steps. Rather, Dr. Bedrin found that plaintiff was impaired in his ability to carry out "complex" job instructions. (AR 216.) The relevant question is thus whether the ALJ's conclusion that plaintiff could perform "2-3 step simple repetitive tasks" contradicted Dr. Bedrin's opinion that plaintiff could not follow "complex" job instructions. The Court finds that it did not. "Simple, repetitive" tasks, by their nature, do not require "complex" instructions. Moreover, a task is not "complex" simply because it might involve three steps rather than two. The Court accordingly finds that the ALJ did not ignore Dr. Bedrin's opinion or draw a conclusion that contradicted it.

B.   <u>Issue Two</u>.

On November 13, 2003, plaintiff completed a disability report in which he indicated that he takes Valium, Lopid, Zestril, Metformin, and Vicodin. (AR 74.) Plaintiff noted that he gets "[t]ired" as a result of taking Lopid, Zestril, and Metformin. (*Id.*) In a disability report dated May 25, 2004, plaintiff reported that he takes Diazepam, Naproxen, Phenergan, Lopid, and Lisinopril. (AR 126.) Plaintiff noted that he gets "[t]ired" as a result of taking the Diazepam, Naproxen, and Phenergan. (*Id.*) In a disability report dated September 13, 2004, plaintiff reported taking Metformin, Norco, Neurontin, Valium, and Methocarbamol. (AR 144.) He noted that he gets "[t]ired" as a result of taking the Metformin and the Neurontin and "[s]leepy" as a result of taking the Norco and Valium. (*Id.*)

Plaintiff contends that Social Security Ruling 96-7p requires that the ALJ consider the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." Social Security Rule 96-7p, 1996 WL 374186 *3. Plaintiff contends that the side effects plaintiff experiences "can significantly impact [plaintiff's] ability to perform and sustain full

6

time competitive work, and therefore, should be properly considered." (JS 9.)

Plaintiff misstates the intent of Ruling 96-7p. That ruling address instances where the evaluation of symptoms, including pain, under 20 C.F.R. §§ 404.1529 and 416.929 requires a finding about the credibility of an individual's statements. This may occur when the individual's statements about pain or other symptoms are not substantiated by the objective medical evidence. In such an instance, the ALJ must consider all of the evidence in the case record, including any statements made by the individual. The ALJ must then make a finding on the credibility of the individual's statements about his or her symptoms and their functional effects. Social Security Ruling 96-7p, 1996 WL 374186 *1, *4.[2]

The ruling states that the ALJ must consider, among other facts, the "type, dosage, effectiveness, and side effects" of the claimant's statements in order to determine whether the claimant is telling the truth about his symptoms. Social Security Rule 96-7p, 1996 WL 374186 *3. But the Ruling does not require that the ALJ consider whether medication side effects, *in themselves*, might prevent a claimant from working. *See id.* at 3. Rather, consideration of the claimant's statements on medication use and other factors, along with other evidence in the record, provides the ALJ with an overview of the claimant's subjective complaints, in order to evaluate the claimant's credibility. In drawing conclusions about the claimant's credibility, the ALJ may consider, for example, whether the claimant's statements are consistent internally and with other information in the record. *Id.* at 5.

Moreover, the Ninth Circuit has held that an ALJ may properly reject a claimant's testimony regarding claimed side effects by using "ordinary techniques of credibility evaluation" and providing a specific, clear and convincing reason, supported by the record, that the claimant's testimony was generally not credible. *Thomas v. Barnhart*, 278 F.3d 947, 959-60 (9th Cir. 2002) (upholding ALJ's finding

---

[2] "A symptom is an individual's own description of his or her physical or mental impairment(s)." Social Security Rule 96-7p, 1996 WL 374186 *3.

7

that claimant generally lacked credibility as permissible basis for not including claimant's testimony regarding side effects in hypothetical to vocational expert) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991), and *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)); *but see Varney v. Secretary of Health and Human Servs.*, 846 F.2d 581, 585-86 (9th Cir.) (rejection of testimony regarding side effects requires specific finding that side effects testimony was not credible), *reversed and remanded on other grounds*, 859 F.2d 1396 (9th Cir. 1988).

Plaintiff's medication list, which was part of the administrative record, indicated that Lisinopril may cause fatigue, Lexapro may cause drowsiness, and Diazepam may cause drowsiness that may go away during treatment. (*See* AR 100, 103, 105.) However, the only evidence that plaintiff personally suffered such effects from those or other medications came from plaintiff's disability report statements and hearing testimony. (*See* AR 74, 126, 144.) The ALJ found that "the medical evidence does not demonstrate that [plaintiff] is as limited as he contends and/or the evidence does not support his subjective complaints." In support of this assessment of plaintiff's credibility, the ALJ cited the discrepancy between plaintiff's complaints that his condition was pervasive and limiting, on the one hand, and the fact that his treating doctors had not recommended a TENS unit, epidural injections, and surgery. (AR 14.) The ALJ also noted the discrepancy between plaintiff's claimed symptoms and the findings of Alexander Michelson, M.D., a consultive internal medicine practitioner who evaluated plaintiff in March of 2004. (*Id.*) The ALJ further noted that plaintiff was treated for back pain in March 2004 "when he was lifting heavy furniture," an activity not consistent with plaintiff's subjective complaints. The ALJ additionally pointed out that the ALJ's treating physicians responded with limited and conservative treatment, which was inconsistent with the medical response that would be expected if they found the symptoms to be as severe as plaintiff claimed. (*Id.* at 15.)

Thus, the ALJ's finding that plaintiff was "not entirely credible" (AR 14) with respect to the intensity, duration, and limiting effects of his symptoms supports was

specific, clear and convincing, and supporting by the record.  Accordingly, it supported rejecting plaintiff's claims regarding his medication's side effects.  *See Thomas*, 278 F.3d at 960.

C. <u>Issue Three</u>.

During the hearing, the ALJ asked the vocational expert, Stephen M. Berry, the following hypothetical question:

> Q: I want you to assume a person who [INAUDIBLE] at least 50 years old and who has a high school education.  We'll assume work experience – in fact, I want you to do it both ways.  I want you to give me the answers with work experience as indicated in exhibit 14E, as well as no work, past relevant work.  This individual would be limited to lifting or carrying no more than 20 pounds occasionally, 10 pounds frequently.  With pushing and pulling consistent with the lifting and carrying.  He could sit for six hours out of an eight hour day and, or excuse me, stand and walk for six hours out of an eight hour day and sit for eight hours out of an eight hour day, provided he was allowed to change positions on [*sic*] to three minutes an hour.  He could occasionally balance, bend or stoop, kneel, crouch, or crawl.  He would be limited to doing simple repetitive tasks three, two to three steps, with only occasional contact with the public.  No supervision of others, and no working around hazardous or dangerous machinery or at unprotected heights or driving.  Assuming there is past relevant work, would he be able to complete any of it?

| | | |
|---|---|---|
| 1 | A: | No. |
| 2 | Q: | Would there be any transferrable [*sic*] skills, if there |
| 3 | | were past relevant work? |
| 4 | A: | [INAUDIBLE] believe so. |
| 5 | Q: | Are there other jobs in the regional or national |
| 6 | | economies that the person with those limitations could |
| 7 | | do? |
| 8 | A: | Yes, such an individual would be able to work as an |
| 9 | | assembler of small parts, DOT number 706.684-022. |
| 10 | | This is work at the light exertional level, unskilled, |
| 11 | | SVP of 2. In the region there's approximately 30,000 |
| 12 | | such jobs; nationally about 350,000. Another example |
| 13 | | would be that of inspector, a final inspector, DOT |
| 14 | | number 727.687-054. This is work at the light |
| 15 | | exertional level, unskilled, SVP of 2. In the region |
| 16 | | approximately 5, 000 such jobs. Nationally about |
| 17 | | 60,000. And a third example would be that of a |
| 18 | | sewing machine operator. DOT number 786.685-030. |
| 19 | | This is work at the light exertional level, unskilled, |
| 20 | | SVP of 2. In the region approximately 16,000 such |
| 21 | | jobs. Nationally about 175,000. |
| 22 | Q: | Now, I would assume that if I were to take his |
| 23 | | testimony that he needs to lay down three hours a day |
| 24 | | that there would not be any jobs available? |
| 25 | A: | That's correct. |
| 26 | Q: | And I would, likewise, if he could not alternate |
| 27 | | between sitting and standing over an eight hour day, |
| 28 | | could not work an eight hour day even though he was |

|   |   |   |
|---|---|---|
| 1 |   | able to alter his position between standing and sitting |
| 2 |   | at will. |
| 3 | A: | Yes, there would be no jobs. |

(AR 415-16.)

In concluding that plaintiff was not disabled, the ALJ relied on the vocation expert's testimony as follows:

> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as samll parts assembler (706.684-022, light, SVP 2), of which there are 30,000 such jobs in the regional economy and 350,000 in the national economy; final inspector (727.687-054, light, SVP 2), of which there are 5,000 such jobs in the regional exonomy and 60,000 in the national economy; and, sewing machine operator (706.685-030, light, SVP 2), of which there are 16,000 such jobs in the regional economy and 175,000 in the national economy.

(AR 16.)

Plaintiff asserts again that Dr. Bedrin "limited" plaintiff to performing tasks involving "simple one and two-step instructions." Plaintiff argues that in his hypothetical to the vocational expert, the ALJ failed to set forth this limitation. Plaintiff contends that the three occupations the ALJ found plaintiff could perform (Small Products Assembler, Final Inspector, and Sewing-Machine Operator) require a reasoning level of 2 under the Dictionary of Occupational Titles (the "DOT"). This reasoning level, urges plaintiff, requires a mental capacity beyond the limitation Dr. Bedrin allegedly found. Plaintiff also objects to the ALJ's failure to include the alleged effects of plaintiff's medication in the hypothetical to the vocational expert. (JS 11-15.)

1   The Court disagrees.  As set forth above, Dr. Bedrin did not limit plaintiff to
2   tasks requiring only "simple one and two-step instructions."  Rather, Dr. Bedrin found
3   that plaintiff's ability to follow "complex" instructions was impaired.  *See* discussion,
4   *supra*.  Occupations requiring a reasoning level of 2 do not run afoul of that limitation.
5   Reasoning levels are found in the DOT under the General Education Development
6   definitions.  They gauge the minimum ability a worker needs to complete the job's
7   tasks.  DOT Appendix C - Components of the Definition Trailer, Scale of General
8   Education Development (GED) Reasoning Development ("DOT Reasoning Scale"),
9   1991 WL 688702; *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005).  The
10  DOT reasoning levels range from a low of 1 to a high of 6.  As one goes up the
11  numerical reasoning scale, the level of detail involved in performing the job increases
12  while the job tasks become less routine.  *Meissl*, 403 F. Supp. 2d at 983.

13  For example, a job with a reasoning level of 1 only requires that the worker be
14  able to "[a]pply commonsense understanding to carry out simple one-or two-step
15  instructions" in "standardized situations with occasional or no variables."  DOT
16  Reasoning Scale.  A job with a reasoning level of 2 requires that the worker "[a]pply
17  commonsense understanding to carry out detailed but uninvolved written or oral
18  instructions" and "deal with problems involving a few concrete variables in or from
19  standardized situations."  *Id.*  As plaintiff contends, the occupations of Small Products
20  Assembler, Final Inspector, and Sewing Machine Operator jobs require a reasoning
21  level of 2.  *See* DOT 706.684-022 (Assembler, Small Products I), 1991 WL 679050;
22  DOT 727.687-054 (Final Inspector), 1991 WL 679672; DOT 786.685-030 (Sewing-
23  Machine Operator, Semiautomatic), 1991 WL 681083.

24  Clearly, a job with a reasoning level of 1 entails only simple, repetitive tasks.
25  *See* DOT Reasoning Scale; *see also*, *e.g.*, DOT 402.687-014 (Harvest Worker,
26  Vegetable), 1991 WL 673298; DOT 389.687 (Cleaner, Window), 1991 WL 673282;
27  *Meissl*, 403 F. Supp. 2d at 984.  However, even though the definition of reasoning
28  level 2 refers to "detailed" instructions, it is not inconsistent with a finding that a

12

1 claimant's residual functional capacity limits him or her to tasks involving simple
2 instructions. *Meissl*, 403 F. Supp. 2d at 984.  Thus, the occupations of Small Products
3 Assembler, Final Inspector, and Sewing Machine Operator do not require a mental
4 capacity beyond the limitation found by Dr. Bedrin, in that they do not involve
5 "complex" instructions.
6      As to plaintiff's second argument, plaintiff is correct in asserting that an ALJ is
7 required to accurately set out the plaintiff's limitations in his hypothetical to the
8 vocational expert. *Andrews v. Shalala*, 53 F.3d 1035, 1043-44 (9th Cir. 1995) (remand
9 upheld where hypothetical left out categories of plaintiff's limitations).  However, no
10 error occurs where the ALJ's hypothetical to the vocational expert omits limitations
11 claimed but not proven. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).
12 Thus, the ALJ was not required to set out plaintiff's claimed limitations resulting from
13 the alleged side effects from his medication.

## CONCLUSION

16      For the reasons set forth above, this Court finds that the Commissioner's
17 decision is supported by substantial evidence and is free of material legal error.
18 Therefore, the decision of the Commissioner is AFFIRMED.
19      IT IS SO ORDERED.

21 DATED: March 24, 2008

                                                    / s / FREDERICK F. MUMM
                                                        FREDERICK F. MUMM
                                                United States Magistrate Judge